UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ORA CHRISTINE SHELTON,  )<br>  )<br>      Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>MICHAEL ASTRUE,  )<br>Commissioner of the Social  )<br>Security Administration,  )<br>  )<br>      Defendant.  ) | CASE NO. 1:07-cv-766-DFH-JMS |

ENTRY ON JUDICIAL REVIEW

This is an action for judicial review of the decision of the Commissioner of Social Security to deny plaintiff Ora Shelton's application for disability insurance benefits. Administrative Law Judge (ALJ) Reinhardt Korte denied Ms. Shelton's claim after finding that she suffered from severe impairments as a result of a car accident but was capable of performing her previous work. Ms. Shelton argues that the ALJ erred in failing to consider the side effects she experienced from her pain medication. As explained in detail below, the ALJ's decision was supported by substantial evidence and is affirmed. The court may not reweigh the evidence and make an independent, *de novo* decision, but must defer to an ALJ's resolution of conflicting evidence.

*Background*

Ms. Shelton was born in 1953. She worked consistently through her adult life, most recently in a pencil factory and also as a waitress/cashier, and in a supermarket. R. 77-80.

Ms. Shelton was involved in a serious car accident on May 13, 2002. Her car was struck from the rear by a semi truck and flipped over twice. She sustained several injuries as a result of the accident. On July 29, 2002, she underwent a cervical diskectomy to correct a disk herniation that was causing severe neck pain. R. 208-09. A number of physicians stated that this surgery was extremely successful and Ms. Shelton's neck pain had resolved. R. 203, 212.

Ms. Shelton later began experiencing pain in her lower back and legs. An MRI taken on January 8, 2003 revealed that she had degenerative disk disease. R. 344. To relieve the pain she was experiencing, she had a series of lumbar epidural steroid blocks. R. 482, 491, 504. While these injections helped temporarily, her pain continued. Ms. Shelton underwent a laser diskectomy on July 24, 2003. R. 301. Dr. Morrell described this surgery as a complete success. R. 214.

Ms. Shelton has also suffered from pain in both of her feet since the car accident. Her medical records demonstrate that she has consistently complained of pain in her feet since July 2002. See, *e.g.,* R. 11, 200, 214, 230, 279, 408, 605,

697.  In December 2002, she described the pain to one doctor as "numbness, pins and needles and pressure/pain-like sensations . . . ." R. 386.  In January 2004, she stated to her doctor:  "the pain is either burning or squeezing and sometimes it feels like it is going to explode." R. 230.  Dr. Morrell diagnosed Ms. Shelton with reflex sympathetic dystrophy.  R. 214.  Ms. Shelton underwent three bilateral sympathetic blocks in an attempt to ease the pain in her feet.  R. 319.  She also had two nerve stimulation trials.  R. 171.  Ms. Shelton's pain persisted despite these procedures.

Ms. Shelton has tried a variety of medications to control her foot pain.  The record indicates that she has tried Percocet, R. 215, a Medrol Dosepak, R. 347, Gabitril, R. 347, Klonepin, R. 216, and Methadone, R. 693. In April 2004, Dr. Morrell stated that she was taking the equivalent of fifteen Percocets per day for pain.  R. 214.  On October 18, 2004, Dr. Morrell stated:

> The medicine makes her tired.  The only limitations are those caused by the discomfort in her feet and the fatigue and drowsiness from her medication.  The medication does affect her cognitively and that is a problem for her going back to work.  Physically, other than the problem with her feet and the side effects from her medication, she is doing well.

R. 171.  Dr. Morrell opined that Ms. Shelton was unable to work because of the side effects she suffered from her pain medication. R. 172.  In January and March 2007, Dr. Morrell stated he believed Ms. Shelton was permanently disabled because of chronic pain in her feet.  R. 11, 697.

Ms. Shelton reported several episodes of feeling numb and detached following the car accident. R. 393. She had flashbacks to events surrounding the accident and was anxious about driving on highways and near trucks. *Id.* Her psychotherapist, Ms. Cindy Harcourt, diagnosed her with acute stress disorder, which she changed to post traumatic stress disorder after the symptoms persisted for more than four weeks. R. 395. In March 2004, Ms. Harcourt stated that Ms. Shelton's psychological condition had significantly improved. R. 394.

*Testimony at the Hearing*

Ms. Shelton had a hearing before ALJ Reinhardt Korte on January 26, 2006. R. 699-754. She described the pain in her feet as ranging from six out of ten on the numeric pain intensity scale, which corresponds to "distressing, miserable, agonizing and gnawing," to nine out of ten. R. 729-31. Ms. Shelton testified that she was taking 300 milligrams of Neurontin per day and thirty milligrams of Methadone every six hours for her foot pain. R. 722-24, 734. She stated that the Neurontin gave her nightmares and the Methadone made her tired, confused, and disoriented. R. 722-23. She testified that she exercised, cooked, and did household chores on a daily basis. R. 725-26. She also dropped children off and picked them up from school, and did volunteer work reading to and spending time with an elderly woman in her community. R. 727.

Dr. Pitcher, a medical expert, opined that Ms. Shelton was not suffering from a severe mental disorder. R. 748. She stated that the medical records showed that Ms. Shelton's mood disorder and anxiety disorder had improved as a result of her work with her therapist and her medication. R. 748-49.

Dr. Schneider, another medical expert, testified that based on the medical evidence in the record, he believed Ms. Shelton was able to perform work at the light level. R. 739. He explained that reflex sympathetic dystrophy is typically treated with blocks, dissection of the nerve, or medication. R. 745. He stated that Neurontin "can affect your senses." R. 740. He also stated that thirty milligrams every six hours of Methadone could make Ms. Shelton drowsy and lethargic. R. 741. He expressed doubt as to whether it was necessary for Ms. Shelton to take both Neurontin and Methadone for her foot pain. *Id.*

Mr. Burger, a vocational expert, testified that Ms. Shelton had experience working as a waitress and cashier. R. 750. Though Ms. Shelton performed these jobs at a medium level, Mr. Burger stated that the job of cashier is typically performed at the light level. R. 751. Mr. Burger testified that, notwithstanding her impairments, Ms. Shelton was able to perform work as a light, unskilled cashier, mail clerk, or office clerk. R. 752.

*Procedural History*

The ALJ issued his decision denying benefits on November 22, 2006. R. 17-24. The Appeals Council denied further review of the ALJ's decision, so the decision of the ALJ is treated as the final decision of the Commissioner. See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Ms. Shelton filed a timely petition for judicial review. The court has jurisdiction under 42 U.S.C. § 405(g).

*The Statutory Framework for Determining Disability*

To be eligible for disability insurance benefits, a claimant must establish that she suffers from a disability within the meaning of the Social Security Act. To prove disability under the Act, the claimant must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Ms. Shelton was disabled only if her impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her. *Id.* at § 423(d)(2)(A).

The implementing regulations for the Act provide the familiar five-step process to evaluate disability. The steps are:

(1) Has the claimant engaged in substantial gainful activity? If so, she was not disabled.

(2) If not, did the claimant have an impairment or combination of impairments that are severe? If not, she was not disabled.

(3) If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant was disabled.

(4) If not, could the claimant do her past relevant work? If so, she was not disabled.

(5) If not, could the claimant perform other work given her residual functional capacity, age, education, and experience? If so, then she was not disabled. If not, she was disabled.

See generally 20 C.F.R. § 404.1520. When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Applying the five-step process, the ALJ found that Ms. Shelton satisfied step one because she had not engaged in substantial gainful activity since her alleged onset date of disability. At step two, the ALJ found that Ms. Shelton suffered the severe impairments of degenerative disk disease of the cervical and lumbar spine and reflex sympathetic dystrophy. At step three, the ALJ found that Ms. Shelton's impairments did not meet or equal a listed impairment. At step four, the ALJ found that Ms. Shelton had the residual functional capacity to perform less than

the full range of light work, but was able to perform her past relevant work as a cashier as it is performed generally.

*Standard of Review*

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the

Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). This determination by the court requires that the ALJ's decision adequately discuss the relevant issues: "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994). Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build a logical bridge from the evidence to [his] conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

*Discussion*

Ms. Shelton argues that the ALJ erred in disregarding the evidence she presented about the side effects of her pain medication. She does not challenge the ALJ's conclusion that she was not disabled based on the pain in her feet. She also does not argue that the side effects of her medication caused her to meet a Listing. Her argument is that the side effects she experienced from her medications made it impossible for her to perform her previous work or any other work.

"The ALJ is not required to make specific findings concerning the side effects of prescription drugs on the claimant's ability to work." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), citing *Nelson v. Secretary of Health and Human Services*, 770 F.2d 682, 685 (7th Cir. 1985). An argument that the ALJ did not discuss the side effects of medication is essentially an argument that the ALJ's decision is not supported by substantial evidence. *Id.*

To determine whether Ms. Shelton could return to her past relevant work, the ALJ evaluated Ms. Shelton's credibility. The ALJ found that Ms. Shelton was credible to the extent that the record supported her assertions that she had pain and numbness in her feet that limited her ability to function to some degree. However, the ALJ found that her activities of daily life indicated that she was not as limited as she alleged.

The ALJ is required to consider statements of the claimant's symptoms and how they affect her daily life and ability to work. 20 C.F.R. § 404.1529(a). There is a two-part test for determining whether a claimant's complaints contribute to a finding of disability. First, the claimant must provide objective medical evidence of an impairment or combination of impairments that could be expected to produce the symptoms the claimant alleges. § 404.1529(a-b). Second, the ALJ must consider the intensity and persistence of the alleged symptoms. The ALJ considers these factors in light of medical evidence and any other evidence of: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. § 404.1529(c)(3). After considering whether the evidence shows that the claimant acts on a day to day basis as a person who is really suffering from the symptoms the claimant has alleged would act, the ALJ makes a credibility determination. § 404.1529(c)(4).

The ALJ is in the best position to observe the demeanor of a witness, so the court will typically not upset an ALJ's credibility determination as long as it is supported by the record and is not "patently wrong." *Herron*, 19 F.3d at 335. Reviewing courts are in a better position to review an ALJ's credibility determination when it rests on objective factors or fundamental implausibilities rather than subjective considerations. *Id.*

Ms. Shelton testified at the hearing that she took Neurontin and Methadone to control the pain she had in her feet. R. 722-24. She stated that the Neurontin gave her nightmares and the Methadone made her tired, sleepy, and confused. R. 722-23. She also stated that her doctor was experimenting with different drugs to minimize the side effects she experienced. R. 724.

Ms. Shelton's testimony that she experienced side effects from her medication is supported by the objective medical testimony in the record. Dr. Morrell stated on October 18, 2004 that all of the procedures that he and other doctors had tried were unsuccessful at relieving Ms. Shelton's foot pain. R. 171. He explained that he was treating the pain with several types of medication, which made Ms. Shelton tired. *Id.* He stated: "The medication does affect her cognitively and that is a problem for her going back to work." *Id.* He opined that if there were a way to resolve the pain in her feet, she would not need pain medication and would be able to work. *Id.* at 172.

Dr. Schneider, the medical expert, testified at the hearing that Neurontin causes side effects and "can affect your senses." R. 740. He also testified that a dose of thirty milligrams of Methadone every six hours would make someone drowsy and lethargic. R. 741. He also expressed doubt as to whether it was necessary for Ms. Shelton to take both Neurontin and Methadone to help her cope with the pain in her feet. *Id.*

Having satisfied the first requirement, the ALJ next considered the intensity and persistence of Ms. Shelton's symptoms in light of all of the evidence in the record. He noted that the pain in Ms. Shelton's back and neck had resolved. There was evidence that she had suffered from severe foot pain during the period between May 2002 and the hearing. R. 22. The ALJ noted that Ms. Shelton had testified that she took pain medication and that she experienced side effects such as nightmares, confusion, and sleepiness. R. 20. He also recognized that Dr. Morrell had opined that side effects from her medication were an unresolved issue. R. 22.

The ALJ then discussed whether Ms. Shelton's complaints were credible in light of her daily activities. The ALJ did not specify whether he was considering the credibility of her complaints about the side effects of the medication, the complaints about her foot pain, or both. Because the ALJ had noted Ms. Shelton's complaints about the side effects of her medication previously, it is reasonable to conclude that the ALJ's analysis included the complaints about both the side effects from her medication and her foot pain. He found that Ms. Shelton was able to walk up to a mile, exercise on a treadmill, do laundry, cook meals, and socialize. R. 22. Based on her ability to perform many daily activities, the ALJ found that Ms. Shelton's claims about her symptoms were not entirely credible.

A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and is not inconsistent with other evidence in the

record. 20 C.F.R. § 404.1527(d)(2). But the ALJ, not a doctor selected by the claimant, makes the final determination whether a claimant is disabled. *Dixon*, 270 F.3d at 1177. While Dr. Morrell opined that Ms. Shelton was unable to work because of the side effects of her medication, "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Id.*

Here, Dr. Morrell's conclusion that the side effects Ms. Shelton experienced from her medication made her unable to work was inconsistent with other evidence in the record. Several doctors who were familiar with the medications she was taking stated that Ms. Shelton was capable of performing light work. Dr. Schneider had reviewed her medical records and heard Ms. Shelton's testimony about the side effects of her medication at the hearing, and opined that she was able to perform light work. R. 737. Dr. Shamaa, the state medical consultant, also opined that Ms. Shelton was able to work. R. 438-49.

Ms. Shelton's own testimony at the hearing was inconsistent with her claim that she was unable to work because she was unable to concentrate or be aware of her surroundings due to the side effects of her pain medication. She testified that she was able to exercise and perform household chores on a daily basis. R. 725-27. She also testified that she drove, dropped off and picked up young children from school, and spent time with and read to an elderly woman on a

voluntary basis. R. 711, 727. All of these activities required Ms. Shelton to be able to concentrate and to be aware of her surroundings.

The ALJ's conclusion that Ms. Shelton was able to perform her past work despite her complaints of disabling side effects from her pain medication was supported by substantial evidence in the record. The ALJ did not commit an error of law in reaching this conclusion.

*Conclusion*

The evidence before the ALJ conflicted on the decisive issue of Ms. Shelton's ability to work. The ALJ considered that evidence and reached a reasonable conclusion that was supported by the evidence. The Commissioner's decision must therefore be affirmed. The court will enter final judgment accordingly.

So ordered.

Date: March 25, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov
tracy.jones@usdoj.gov
lin.montigney@usdoj.gov

Ronald L. Wilson
BADELL & WILSON
bwlaw@bwlawoffice.com